FILED
03 MAR 27 PM 3: 42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONNIE WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 01-B-1173-S |
| | ) | |
| UNIVERSAL CONSTRUCTION, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
MAR 27 2003

## MEMORANDUM OPINION

This case is currently before the court on Motion for Summary Judgment, (doc. 24), filed by Defendant Turner-Universal Construction.[1] Plaintiff Connie Wallace has sued defendant, her former employer, alleging retaliation in violation of Title VII, 42 U.S.C. § 2000e-3.[2] Upon consideration of the record, the submission of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the

---

[1]Defendant contends that its proper name is Turner Universal Construction Company, Inc., (doc. 4 ¶ 4), and not "Universal Construction" as alleged in plaintiff's complaint, (doc. 1 ¶ 4).

[2]Plaintiff's Complaint contains a claim for sexual harassment. (Doc. 1.) This claim was dismissed on plaintiff's motion. (Doc. 40.)



initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. FACTUAL SUMMARY

Defendant is a construction company. (Doc. 1 ¶ 4.) It has its office in Huntsville, Alabama, and it operates and hires employees for construction jobs in Alabama. (*Id.*) Defendant hires Laborers, who are unskilled workers, to run errands and perform clean-up work on job sites. (Doc. 25, Ex. 4 at 43.) Plaintiff worked for defendant as a Laborer from

1994, until defendant laid her off on December 24, 1998. (Doc. 1 ¶¶ 3, 7, 11; doc. 4 ¶ 3.) She was considered a good worker. (Doc. 25, Ex. 7 at 44.)

The first project that plaintiff worked was the Lockheed Project in Courtland, Alabama. (Doc. 25, Ex. 4 at 41.) She then worked on a project at the Sparkman Center Project. (*Id*. at 42.) Larry Henson was Superintendent on both projects. (*Id*. at 41-42.) Her last position was working in defendant's office. (*Id*. at 60.)

Plaintiff contends that she was sexually harassed by Billy Ray Boyd, her supervisor, in December 1997, while working on the Sparkman Center Project. (*Id*. at 42-43, 53.) Shortly after the incident, plaintiff complained that Boyd had harassed her to Henson; Lee Edminson, Project Manager in the Special Project Division;[3] and James Farley, Assistant Superintendent.[4] (Doc. 25, Ex. 4 at 54-55, 62.) Plaintiff does not allege that she complained to Roger Montgomery, Project Superintendent for Special Projects Division. Montgomery testified that the first time he was aware of plaintiff's allegation of sexual harassment was at or around the time plaintiff filed the instant action. (Doc. 25, Ex. 6 at 27, 35.)

Boyd was sent to Nashville, Tennessee, shortly after plaintiff complained of sexual harassment. (Doc. 25, Ex. 4 at 114-15.) Thereafter, plaintiff did not have any trouble from Boyd. (*Id*. at p. 115).

---

[3](Doc. 25, Ex. 3 at 5, 7.)

[4](Doc. 25, Ex. 4 at 42.)

Defendant laid plaintiff off in December 1998. (Doc. 25, Ex. 4 at 7.) Plaintiff does not allege that her lay-off was discriminatory. (Pl.'s Br. at 16.)

Defendant does not have a policy for recalling laid off employees. (Doc. 25, Ex. 8 at 53-54.) Barbara Estrin, Education Group Manager,[5] stated that rehiring laid off employees is "up to the discretion of the project superintendent on every job site." (*Id.* at 54-55.) She stated, "[I]f somebody has been laid off and they want to work, they'll contact the individual superintendent and see if there's anything gong on." *(Id.* at 55.)

In February 1999, a few months after her lay-off in December 1998, and over a year after her complaints of sexual harassment, plaintiff made an effort to get rehired by defendant: she went to one job site, she made a couple of telephone calls; and she went to defendant's office. (Doc. 25, Ex. 4 at 96.)

On the occasion of her visit to the job site, plaintiff was told that Henson, who was in charge of hiring at that work site, was at the site at that time; however, she did not wait to talk to him. (*Id.* at 92-96; doc. 25, Ex. 7 at 50-51.) Plaintiff never spoke to Henson about working on that job site. (Doc. 25, Ex. 4 at 96. )

Plaintiff also made one trip to defendant's office in Huntsville to see Montgomery, who made hiring decisions for the Special Projects Division, but she did not see him. (Doc. 25, Ex. 4 at 96-97.)

---

[5](Doc. 25, Ex. 8 at 9.)

4

Plaintiff concluded her efforts to seek re-employment with defendant without actually ever speaking to anyone that could make the decision to hire her. (*Id.* at 96; doc. 25, Ex. 7 at 50-51.)

In February 1999, Brian Taylor, defendant's EEO Officer, called plaintiff. (Doc. 25, Ex. 4 at 91, 94.) Taylor told plaintiff that he had heard about her allegation of sexual harassment and that he was calling to discuss the matter. (*Id.* at 123, 129). Plaintiff knew Taylor was in management, he had given plaintiff a sexual harassment handbook when she worked for defendant, and sexual harassment issues were in "his area." (*Id.* at 126).

During this conversation, plaintiff refused to give Taylor any details about her claim that she had been sexually harassed. (*Id.* at 124.) She testified, "I didn't have a job with [defendant], so I wasn't going to volunteer anything to him." (*Id.* at 126.) She told Taylor that she did not want to "talk of what [Boyd] had done to [her]" or to go any further with her complaint because she was "already hurt enough." (*Id.* at p. 127, 128.) In response to Taylor's inquiry into how she was doing, plaintiff said, "Well, I'm not doing too well. I'm not working. I need to go back to work;" Taylor told her, "Well, maybe you will go back to work soon." (*Id.* at 123.)

On or about April 30, 1999, plaintiff filed a charge alleging sex discrimination and retaliation with the EEOC. (Doc. 25, Ex. 4, ex. 3.) In this charge, plaintiff alleged:

> My Foreman, Billy Ray Boyd, sexually and physically harassed me. I made numerous complaints to the company, but no action was taken. The verbal abuse from Boyd continued. The harassment was witnessed by co-workers.

5

> On December 24, 1998 I was laid off. February 1999 I traveled to a job site in Huntsville because Lee [Edminson] sent me there. The project manager at the Huntsville job site was aware of my complaints of sexual harassment and told me so. I was subsequently not hired for this project. I have made several phone calls to Roger Montgomery, a supervisor to inquire about coming back to work. My phone calls were never returned.
>
> On or about February 14, 1999 I spoke with a former employee that stated Boyd was being transferred to work at the Huntsville job site.
>
> Buddy Stewart, the superintendent, told me that he wanted to put me back to work, however, to date I have not returned to work. Other employees with less experience and less seniority have been rehired. This would include, male employees and female employees that have never complained about sexual harassment.

(*Id.*)

In June 1999, Taylor offered to reinstate plaintiff and pay her back pay. (Doc. 25, Ex. 4 at 85-88.) No conditions were placed on the reinstatement, and defendant did not ask plaintiff to dismiss her EEOC complaint as a condition of her acceptance of the offer of reinstatement. (Doc. 25, Ex. 2 at 53-54.) Also, Taylor told plaintiff that Boyd would not be on the same job. (*Id.* at 54.) Plaintiff turned down the offer of reinstatement because she had obtained another job. (Doc. 25, Ex. 4 at 87.)

Defendant contends that it did not have any available Laborer positions in the Huntsville area until July 1999. (Doc. 25, Ex. 1 at 1 ("During the period [from] December 1, 1998, . . . and July 1999 . . ., there were no Laborer positions available in Alabama or within a reasonable commuting distance from Huntsville, Alabama."); *see id.* at 2-5.) Laborers are hired from and work in the same region (for example the greater Huntsville region); they do not travel to another region to work. (*Id.* at 4; doc. 25, Ex. 8 at 57.) The

only employees hired in the Huntsville area were hired to work as a Concrete Finisher and as a Carpenter's Helper. (Doc. 25, Ex. 1 at 2-3; doc. 25, Ex. 8 at 41, 44.) There is no evidence that plaintiff was qualified to work in either position.

### III. DISCUSSION

Plaintiff contends defendant retaliated against her for engaging in protected activity, namely her complaints of sexual harassment, by not re-hiring her following her lay-off in December 1998.

In order to establish a prima facie case of retaliation in violation of Title VII, Plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)(quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998)(quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993)))(internal quotations omitted). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (citations omitted).

The court assumes, without deciding that plaintiff can establish a prima facie case of retaliation "because [the court] find[s] that [defendant's] legitimate reason[ ] for the decision [is] dispositive." *Id*.

Defendant contends that it did not re-hire plaintiff, prior to its offer of employment in June 1999, because it did not have a Laborer position available in the greater Huntsville area. (*See* doc. 25, Ex. 1.) Plaintiff contends that this reason is a pretext because defendant hired two laborers in April 1999. (Pl.'s Brief at 17 (citing doc. 25, Ex. 4 at 41, 45, and ex. 3).) Plaintiff contends that defendant hired Leon Gill and Charles Garner as Laborers in April 1999. (*Id.*; *see also* doc. 25, Ex. 4 at 41 and 44.) However, defendant has demonstrated that neither employee was hired as a Laborer, or general, unskilled labor. (Doc. 25, Ex. 1 at 3.) Gill was hired as a Carpenter Helper; Garner was hired as a Concrete Finisher. (*Id.*) Plaintiff has not presented any evidence to dispute this fact or to otherwise demonstrate that defendant had Laborer positions available in the greater Huntsville area. Moreover, plaintiff has not presented any evidence that she was qualified for either of these positions.

Thus, plaintiff has failed to demonstrate that defendant's articulated reason for not re-hiring her before June 1999 was a pretext for unlawful retaliation. Therefore, defendant's motion for summary judgment is due to be granted and plaintiff's retaliation claim is due to be dismissed.

## IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment (doc. 24) is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this  27th  day of March, 2003.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge